## WILLIAMS v. CITIZENS GAS COMPANY ET AL.

[No. 26,163. Filed December 22, 1933. Rehearing denied April 17, 1934.]

450

, *William V. Rooker,* for appellant.

*James M. Ogden,* Attorney-General, *George W. Huff-smith,* Deputy Attorney-General, *Edward H. Knight, James E. Deery, William H. Thompson, Albert L. Raab, Thomas D. Stevenson, Louis B. Ewbank, Samuel Dowden, Charles Remster, Henry H. Hornbrook, Albert P. Smith, Paul Y. Davis, Kurt F. Pantzer,* and *Ernest R. Blatzell,* for appellees.

TREANOR, J.—The nature of the suit which gives rise to this appeal is as follows:

"Suit by appellant to establish a trust; to quiet title to property of the trust estate; to recover diverted assets of the trust estate; to recapture the trust and its property from delinquent and insolvent trustees and sequester the same with receiverships; to administer the trust during an emergency and at the end of the emergency turn over the trust and its property to its lawful beneficiaries.

"Allen G. Williams, the plaintiff and appellant, appears as a resident and taxpayer of the City of Indianapolis, suing in the right and behalf, and for the use and benefit, of himself and of all other residents and tax-

payers of said City, similarly situated, any of whom may join as plaintiffs and appellants herein.

"The property involved in the suit is all the property devoted to the manufacture, sale, and distribution of artificial gas, and its by-products, in the Indianapolis territory.

"The asserted trust is a public charitable trust, created in 1905, whereby, upon the performance of certain stated conditions, the inhabitants and residents of Indianapolis, through the agency of their City, as trustees, were to become the beneficial owners of the gas property, at the end of twenty-five years, as an assurance of cheap fuel and light." (Appellant's Brief, pp. 2 and 3).

The errors relied upon are (1) the action of the trial court in sustaining a motion to strike out certain allegations of the plaintiff's complaint and (2) the sustaining of a demurrer to the complaint.

The allegations which were stricken out are as follows:

"That thereupon it was designed by said confederates that a Public Service Commission should be created in and by the State of Indiana with plenary powers to circumvent the Constitutional restrictions of the State and by those means destroy said Public Charitable Trust and substitute in its place and stead a plan and method whereby said Citizens Gas Company should be required to bear the burden of replacing said Indianapolis Gas Company as a going concern, invested with modern and efficient methods, all to the end that upon the termination of an alliance between said Citizens Gas Company and said Indianapolis Gas Company, the latter Company would be in exclusive control of the territory of Indianapolis for all purposes of gas production and sale, and all without cost and expense to said conspirators but wholly at the cost and expense of the inhabitants and taxpayers of said City of Indianapolis."

Appellant's case, as made by his complaint, is a "recapture case. The property sought to be recaptured is the operating franchise, the physical property and the earnings of the Citizens Gas Company of Indianapolis, Indiana . . . ancillary to the quiet title suit 'there is an application for a receiver." (Appellant's Reply Brief, p. 1) Appellant questions:

(1) The constitutionality of the Shively-Spencer Act. (Acts of 1913, ch. 76, p. 167, §12672 et seq., Burns Ann. Ind. St. 1926; §54-107 et seq., Burns 1933, §13905 et seq., Baldwin's 1934).

(2) The validity of the lease entered into between the Citizens Gas Company and the Indianapolis Gas Company.

(3) The validity of the action of the Public Service Commission in approving the aforesaid lease.

(4) The validity of the action of the Citizens Gas Company in surrendering its franchise and accepting in lieu thereof an indeterminate permit from the Public Service Commission.

It is true that this Court has not declared expressly that the Shively-Spencer Act is constitutional; but numerous decisions assume its constitutionality ██ and this assumption entered into the reasoning upon which these decisions rested. It is no longer seriously questioned that the legislative branch of government of the various states of the United States has the power to regulate the conduct of all enterprises which are affected with a public interest.[1]

Note 1. "This extreme form of the police power over public employment remained in the legislative branch notwithstanding the general guaranties of individual liberty contained in the American Constitutitons. To compel the proprietors of those businesses which had been regarded as peculiarly affected with a public interest to serve all that applied at reasonable rates was immemorial practice and therefore was indisputably due process of law. This historical argument was given chief place by the Supreme Court of the United States in the leading case on this branch of the police

This proposition was clearly enunciated in *Winfield* v. *Public Service Commission* (1917), 187 Ind. 53, 60, 118 N. E. 531, in the following statement:

"The state's power of control of such matters is one of the elements of the state government, in the exercise of which the people are represented by the legislature. This element of government is commonly called the state's police power, and in the present case applies to the general interest of the citizens of the state in proper public service. The state may deprive itself of the power to exercise this power by granting directly to the public service companies in charters, or by franchises, freedom from the exercise thereof; but, inasmuch as such grant of freedom is in derogation of common right, it is never presumed to have been made by the state, and the state will not be held to have abandoned the right to exercise its police power, unless the state's intention so to do is expressed in terms so clear and unequivocal as to exclude doubt; and if doubt exists it must be resolved in favor of the state. . . .

"Except where the state has thus irrevocably, either directly or indirectly, divested itself of the right to so exercise its police power, the state may, for the public good, regulate the acts and conduct of the public service companies, and the most frequent call for such regulation relates to charges of such companies for their public service; the principle underlying such regulation being that the charges for service shall be fair and reasonable, all things considered, and that the rate fixed shall not be so low as to deprive the company of means of

power. 'Under these powers,' said the court, 'the government regulates the conduct of its citizens one towards another, and the manner in which each shall use his own property, when such regulation becomes necessary for the public good. In their exercise it has been customary in England from time immemorial, and in this country from its first colonization, to regulate ferries, common carriers, hackmen, bakers, millers, wharfingers, innkeepers, etc., and in so doing to fix a maximum of charge to be made for services rendered, accommodations furnished, and articles sold. To this day, statutes are to be found in many of the states upon some or all these subjects; and we think it has never yet been successfully contended that such legislation came within any of the constitutional prohibitions against interference with private property.'" Wyman on Public Service Corporations, §19, p. 16.

adequate service, nor so high as to unduly burden the public."

In the opinion in the foregoing case this court assumed that the General Assembly could regulate either by direct legislation or by creating a commission with power to regulate individual utility companies, (*Winfield* v. *Public Service Commission, supra,* pp. 68, 69) under general legislative standards. All that was said in that opinion in support of the policy of regulating through an administrative body we thoroughly approve and now expressly hold that the method of regulation adopted in the Shively-Spencer Act is constitutional. Appellant urges that the Act violates the principle of "home rule." We cannot see that regulation of public utilities by a state commission is more violative of the principle of home rule than direct and detailed statutory regulation. There is no express provision in the Constitution securing "home rule" in regulation of public utilities and we find no basis in the provisions covering other subjects for a necessary implication of the reservation of any such local power. Further, the decisions of this court expressly deny the existence of any local power of regulation except through delegation by the General Assembly. In *City of Richmond* v. *Richmond Nat. Gas Co.* (1907), 168 Ind. 82, 79 N. E. 1031, it was held that a statute which authorized a municipality to fix prices of gas "by contract or franchise" did not confer power to regulate price by ordinance. The earlier case of *Lewisville Natural Gas Co.* v. *State ex rel. Reynolds* (1893), 135 Ind. 49, 34 N. E. 702, held that a statute providing "that the boards of trustees of towns, and the common councils of cities, in this State, shall have power to provide by ordinance, reasonable regulations for the safe supply, distribution, and consumption of natural gas within the respective limits of such towns and cities, and to require persons or companies to whom

the privilege of using the streets and alleys of such towns and cities is granted for the supply and distribution of such gas to pay a reasonable license for such franchise and privilege" (Acts of 1887, ch. 20, p. 36) did not authorize a municipality to regulate the price of gas by ordinance. In so holding, the still earlier case of *City of Rushville* v. *Rushville Natural Gas Co.* (1892), 132 Ind. 575, 28 N. E. 853, was overruled. But even in this earlier case this court treated the power to regulate price as having been conferred by the statute above quoted. We conclude that there is no constitutional reservation, express or implied, of home rule or local self-government, which is violated by the Shively-Spencer Act.

Appellant also urges that the power of granting indeterminate permits to furnishers of public utilities violates §13 Art. 11 of the Indiana Constitution, which forbids the creation of corporation, other than banking, by special legislative act. Under the Constitution of 1816 the General Assembly created corporations by special acts which frequently not only gave legal personality but also specifically authorized the corporations thus created to engage in the business of furnishing public utilities. The special acts also frequently included special regulations of facilities and rates.[2] In such cases the General Assembly was exercising two powers in one legislative act, (1) the power to create an artificial legal person, and (2) the power to regulate a public utility, the latter power being exercised chiefly by the device of a permit burdened with conditions. The section of the Constitution of 1851 prohibiting the creation of corporations by special act does

---

Note 2. "A street railroad corporation is none the less a corporation because it does not possess a franchise. It is its right to be a corporation that gives it the capacity to acquire a franchise." *Smith* v. *Indianapolis Street Railway* (1902), 158 Ind. 425, 434, 63 N. E. 849.

not purport to limit the legislative power to regulate utilities; and in our opinion this section does not in any way qualify the power of the General Assembly to regulate either directly by statute or indirectly through the medium of an administrative board. When the power to create corporations by special act was taken from the General Assembly the legislative practice of regulating the conduct of corporations affected with a public interest by imposing conditions upon the grantees of special corporate charters necessarily ceased. There followed a period during which the regulation of local utilities was confined chiefly to restrictions embodied in franchises granted by local municipalities or in contracts executed by local municipalities with local utility companies, but under authority granted by the General Assembly. But, as noted above (*supra* p. 454), local municipalities could not regulate utility rates by ordinance in the absence of express grant of power by the General Assembly. The local municipalities, in granting franchises, or permits, to corporation, or persons, to supply a public utility, acted under authority from the General Assembly and such authority was always subject to modification or revocation by the General Assembly. Under the Shively-Spencer Act the General Assembly exercised this power to revoke the authority of local municipalities to authorize corporations, partnerships, or individuals to function as a public utility and vested this authority in the Public Service Commission. We believe that the General Assembly can confer this authority upon the Public Service Commission and that this authority can be exercised as validly by the Public Service Commission as by local municipalities. The power to grant a permit to furnish a public utility is not in its nature such a legislative power that its exercise must be confined to formal legislative enactment by the General Assembly; it belongs to that class

of administrative powers which the General Assembly, under a general act, can authorize an inferior tribunal to exercise for the purpose of effectively handling situations involving a public interest, such situations being proper subjects for legislative action but not capable of being adequately treated, as a practical matter, in statutory enactments. Consequently the granting of permits, and the making and enforcing of detailed rules and regulations by the Public Service Commission are not subject to the general constitutional restrictions applicable to formal legislative enactments of the General Assembly.

We conclude that appellant's contentions against the constitutionality of the Shively-Spencer Act are not tenable.

In considering appellant's contention that the transaction whereby the Citizens Gas Company surrendered its franchise and accepted an indeterminate permit from the Public Service Commission was invalid it is necessary to recognize that the Citizens Gas Company is a public utility and as such is amenable to the law to the same extent as any other public utility. Granting the existence of a trust relationship between the Citizens Gas Company and a class of persons of which appellant is representative, that relationship cannot qualify the power of control of the State over the Citizens Gas Company as a public utility; nor can it limit the power of the Citizens Gas Company to voluntarily relinquish any contractual or franchise privilege which a public utility may relinquish under the law; nor can any beneficial interest of appellant and members of his class in the property or business of the Citizens Gas Company preclude the State from exercising all control over the affairs of the Citizens Gas Company which the State has the power to exercise by reason of the fact that the Citizens Gas Company is a

public utility. In short, the class of beneficiaries of which appellant is a member hold whatever interest they may have in the Citizens Gas Company subject to the power of the State to control the Citizens Gas Company as a public utility. Under the Shively-Spencer Act the Public Service Commission had the power to accept the surrender of the Citizens Gas Company's franchise and to issue an indeterminate permit. Also the Citizens Gas Company, as a public utility, had the privilege of surrendering its franchise and the right to receive an indeterminate permit. Assuming that stockholders, or creditors, or even appellant's class, might have enjoined the surrender of the Citizens Gas Company's franchise upon a showing that such surrender would cause actual injury to the complaining parties, it does not follow that the transaction can be questioned now. Certainly it was not void; and since the complaint shows that the proceeding was proper and the Public Service Commission and Citizens Gas Company both acted within their statutory powers the transaction must stand as against a collateral attack.

In respect to the alleged invalidity of the lease executed between the Citizens Gas Company and the Indianapolis Gas Company it appears from the complaint that the lease was one which the Citizens Gas Company and Indianapolis Gas Company had the power to execute and one which would result in great advantage to the Citizens Gas Company. If the lease was improvident from the standpoint of the lessee in that the consideration was excessive in view of the value of the use of the assets acquired under the terms of the lease, no facts are alleged to support such a conclusion. And if such a conclusion were justified, the complaint does not make out a case for equitable relief of cancellation and "recapture" of the rentals paid over a period of seventeen years during which the Citizens Gas Company had the

use of the physical equipment and the benefit of the income derived from this use. Further it was within the jurisdiction of the Public Service Commission to consider and approve the lease and the complaint discloses that the Public Service Commission did approve it. The complaint does not make out a case for any relief on the basis of invalidity of the lease or of the action of the Commission in approving the same.

It follows from the foregoing that appellant's complaint fails to make out a case for the quieting of title to any property alleged to belong to a trust estate or for the recapture of the "operating franchise, the physical property and earnings of the Citizens Gas Company." Since the application for a receiver was merely ancillary to the quiet title and recapture claim the complaint does not show appellant's right to the appointment of a receiver. Even if we assume that the Citizens Gas Company is insolvent the appellant as a "resident and taxpayer" has no such interest under the allegations of the complaint as to entitle him to force the appointment of a receiver.

Appellant asks for a decree declaring that a public charitable trust exists in the property of the Citizens Gas Company; and the allegations are sufficient to justify such a decree. The appellees not only concede that a public charitable trust exists but also call attention to the fact that there had been "a final decision by a court of competent jurisdiction forever establishing the existence of such public charitable trust." Since appellant's complaint refers to the case in which this decision was made. (*Todd* v. *Citizens Gas Company of Indianapolis et al.* [1931], 46 Fed. [2d] 855, certiorari denied, 283 U. S. 852, 75 L. Ed. 1459) in such a way as to show that it bore some relation to the questions involved in the instant suit we think it was proper for the trial court to consider the judgment in

that case insofar as it affects the right of appellant, as disclosed by his complaint, to have a decree establishing such a trust. An examination of the judgment in *Todd* v. *Citizens Gas Co. et al. supra,* discloses a final adjudication of the existence and validity of a public charitable trust sought to be established in this suit. Appellant was not entitled to have the trial court pass upon a quesion which already had been decided by a court of competent jurisdiction, since this previous adjudication gives to appellant all the benefit which he could derive from a decree to the same effect in this suit.

As we understand appellant's complaint his claim to relief depends ultimately upon the existence of a conspiracy. It is true, as stated by appellant, that ■■■■■ "when two or more men come to an accord upon an unlawful subject, or that accord is to be performed in an unlawful way, the accord is called a 'conspiracy'." It is equally true that damage must result from a conspiracy before there is any basis for civil relief. In view of our understanding of the facts alleged in appellant's complaint and our construction of the law as applicable thereto the complaint fails to show any unlawful acts committed by defendants. The facts disclose that the "unlawful subject" of accord consisted of the purpose to destroy the Charitable Trust, with the result that the Indianapolis Gas Company would eventually be in "exclusive control of the territory of Indianapolis for all purposes of gas production and sale, and all without cost and expense to said conspirators, but wholly at the cost and expense of the inhabitants and taxpayers of said City of Indianapolis." As we construe the complaint it shows that the Public Charitable Trust has not been impaired in any degree and the binding legal relationships, voluntarily entered into, as disclosed in the complaint, refute the existence of the alleged "unlawful subject" of accord.

The trial court did not err in sustaining the demurrer to the plaintiff's complaint.

In passing upon the sufficiency of the complaint we have treated as a part thereof the allegations (*supra* p. 451) which were stricken out. Although the allegations must have put severe strain on the judicial credulity of the trial judge they are not so unrelated to the charge of conspiracy, as presented by the entire complaint, as to be legally irrelevant. But since we hold that the complaint was subject to demurrer even with these allegations included, the appellant was not injured by the action of the trial court in sustaining the motion to strike.

The judgment of the trial court is affirmed.