**TEST v. CITY OF INDIANAPOLIS et al.**

**No. 8489.**

Circuit Court of Appeals, Seventh Circuit.

Nov. 16, 1944.

Rehearing Denied Jan. 2, 1945.

Arthur L. Gilliom, Karl J. Stipher, Gilliom & Gilliom, and Elbert R. Gilliom, all of Indianapolis, Ind., for appellant.

Wm. H. Thompson, Perry E. O'Neal, Patrick J. Smith, and Sidney S. Miller, all of Indianapolis, Ind. (Archie N. Bobbitt, City Atty., of Indianapolis, Ind., of counsel), for City of Indianapolis.

Paul Y. Davis, Frank C. Dailey, Harvey B. Hartsock, George S. Dailey, and Gustav H. Dongus, all of Indianapolis, Ind., for Citizens Gas Co. of Indianapolis.

Before EVANS, MAJOR, and MINTON, Circuit Judges.

MAJOR, Circuit Judge,

This is an appeal from a judgment favorable to defendants in an action to recover upon certain mortgage bonds and attached interest coupons issued by the defendant Citizens Gas Company of Indianapolis, dated July 1, 1912, and to foreclose the mortgage executed to secure their payment. The mortgaged property constitutes the res of the public charitable trust which this court considered in Todd v. Citizens' Gas Company of Indianapolis, 1931, 46 F.2d 855, and of which the defendant Citizens Gas Company was initial trustee and the defendant City of Indianapolis successor trustee. This trust, created in 1905, to-

gether with its subsequent activities, has furnished the subject matter for much litigation.[1] The facts relative thereto have thus been voluminously recorded, and we shall confine our statement of the instant dispute to those directly pertinent thereto.

All the facts were stipulated, and such stipulation was embodied in and made the court's findings of fact. Plaintiff asserts two claims for herself against each defendant and asserts, also, like claims on behalf of other bondholders similarly situated. One of plaintiff's claims is for personal money judgment against each defendant for the principal amount ($12,000) of her first mortgage bonds and for the amount of attached interest coupons ($4200), issued by defendant Citizens Gas, with interest since the respective due dates of the bonds and coupons. Her other claim is for the foreclosure of the mortgage executed to secure the payment of such bonds and coupons, and for a reasonable allowance as attorney fees. Plaintiff asserts that the others on whose behalf she sues hold bonds in the aggregate principal amount of $19,000, and attached interest coupons in the total amount of $6,650.

The bonds and mortgage were executed by defendant Citizens Gas while it was the initial trustee of the public charitable trust, of which the mortgaged gas utility plant and property constitute the trust res. They purported to be payable July 1, 1942, and the unpaid interest coupons were payable at six-month intervals from July 1, 1935 to July 1, 1942. The mortgaged trust property was conveyed to the defendant City of Indianapolis on September 9, 1935, subject to the legal obligations owed by defendant Citizens Gas. The redemption price of the bonds before maturity was 108% of the principal amount plus accrued interest. In August 1935 the defendant City notified the holders of the outstanding bonds issued under the mortgage that it would pay the principal and accrued interest to September 15, 1935, and that no interest coupons maturing after that date would be paid. The total principal amount of such outstanding bonds was at that time $2,745,000. The owners of all such bonds, except the plaintiff and those for

whom she sues, accepted the City's proposal and surrendered their bonds. Plaintiff and those for whom she sues refused such proposal and demanded that defendants pay according to the tenor of the bonds, which each defendant refused to do. Thus the amount involved in this litigation is the total sum of the interest coupons which became due from September 15, 1935 to July 1, 1942, together with interest at 6% upon the amount of each interest coupon from the time it became due, together with interest at 6% per annum on the principal amount of the bonds as well as upon the total amount of interest coupons from July 1, 1942, the asserted date of maturity. There is a further claim for the use of plaintiff's attorneys in the event she is entitled to recover.

The main defense relied upon by the City is that Citizens Gas as the initial trustee was without power, either express or implied, to execute the mortgage, and that it is void. The City concedes that the proceeds of the mortgage bonds were used for the benefit of the trust and that an equitable lien was created for the principal amount thereof, but contends that it had a right to discharge this lien by paying the principal amount of the bonds and accrued interest at any time upon giving reasonable notice; and further, that the City relieved itself of all liability by depositing with its Controller after notice a sufficient sum to pay the principal amount of all mortgage bonds, with interest to September 15, 1935.

The main defense of Citizens Gas is that the bonds, because of a provision of the mortgage, matured and became payable on August 30, 1930, and that thereafter plaintiff and those for whom she sues were entitled only to the principal amount of such bonds plus interest to the date of payment, which the City offered to make September 15, 1935, as above related.

The court below, without opinion, stated three conclusions of law which in substance are: (1) The law is with the defendants and the plaintiff is not entitled to recover; (2) the mortgage sued upon is invalid and unenforceable because of the fact that the defendant Citizens Gas as initial trustee of the public charitable trust had no power or authority to execute the said mortgage;

---

[1] In addition to the Todd case, see Williams v. Citizens' Gas Company of Indianapolis, 206 Ind. 448, 188 N.E. 212; Chase National Bank v. Citizens Gas Company, 7 Cir., 113 F.2d 217; City of Indianapolis v. Chase National Bank, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47; Gillmor v. Indianapolis Gas Company, 7 Cir., 136 F.2d 925.

and (3) the defendants should recover their costs in the action. In conformity with these conclusions, judgment was entered in favor of the defendants.

In view of what we have stated, it is apparent that the controversy revolves largely around two issues: (1) Was the mortgage void? and (2) Was the maturity date of the bonds accelerated so as to preclude recovery of interest which became due subsequent to September 15, 1935, the date when payment was offered by the City? In this connection, it is pertinent to observe that the court neither found nor concluded that the bonds were invalid, and plaintiff contends that even though the mortgage be void she still is entitled to a judgment against Citizens Gas.

The basis for the trust was the franchise contract granted August 25, 1905, by the Board of Public Works to certain individuals and approved by the council. The grant was to become effective only on condition that a corporation be organized which by declaration in its charter should fix the rights of the stockholders and the City, and the rights to be acquired to carry out the purposes of the grant. It was required that all the stockholders by their voluntary act should declare in advance that the property acquired with the money contributed by them should be held under the obligation of the corporation to convey it to the City when the contributions with interest had been returned, and that, upon return of the contributions as provided, the rights of the stockholders should be extinguished.

The articles of incorporation provided that stock owners be issued certificates of beneficial interest for their shares. Certificate holders were entitled to dividends, and when they had received an amount equal to the par value with certain specified interest, the certificates were to be deemed fully paid and cancelled, and the trustees and directors were then to convey the property to the City to be held by it for the benefit of its inhabitants.

The controversy concerning the power of the trustee to execute the mortgage in question revolves around the following language in the original franchise ordinance and the articles of incorporation:

"If upon the expiration of the term and period of the franchise granted by said city of Indianapolis * * * *, the same shall terminate without the payment of said certificates, * * * then upon no-

tice of such effect to be given said board of directors by the Board of Public Works of said city at least six months before the expiration of said franchise period, the said board of directors shall mortgage its gas plant and property for such sum as to enable it to pay its stock or certificate holders an amount which with what has already been paid will equal the full amount of such subscription with dividends * * *, and with the proceeds thereof, or with the mortgage notes so issued in proper amounts, pay off and discharge the amounts due such certificate-holders and convey said plant to said city subject to such obligations and other legal obligations against said company; Provided, however, That by the term of said mortgage such obligations shall bear interest not exceeding six per centum per annum and be payable on or before ten years from date of execution."

It is the City's contention that by this provision the trustee was given authority to mortgage the trust res for one definite and specific purpose, that is, to "pay off and discharge the amounts due such certificate-holders," and the property was then to be conveyed to the City as successor trustee, subject to the legal obligations of the initial trustee. It is argued that the power of the trustee was limited to that expressly conferred and that the grant of power for such specific purpose negatives the existence of power to mortgage for any other purpose. Furthermore, it is argued that under such circumstances, the grant of power is such as to negative any implied power to execute the mortgage in question.

Plaintiff takes issue with the construction to be placed upon the language last quoted, and in addition relies strongly upon the contention that the trustee had authority to execute the mortgage by reason of a provision of the Indiana statute which was in force at the time the trust was created. The provision (Sec. 4069, Burns' Ind.Stat. 1914) provides:

"All companies organized under the laws of this state heretofore incorporated or hereafter incorporated within this state, shall have full power and authority from time to time to borrow money * * *, for the purpose of enabling such company to purchase real estate, erect buildings with all necessary machinery and fixtures and necessary funds to carry on the improvements and operations of such company; and as an evidence of such loans * * *, may issue its corporate bonds or promis-

**778**

sory notes, and * * * may mortgage its franchise, real estate, income and all other property * * *."

It is urged by plaintiff that the foregoing provision entered into and became a part of the original trust agreement with the same effect as if it had been contained therein. It follows, so it is argued, that the original agreement must be regarded as providing expressly that the initial trust corporation should have the powers conferred by this provision. A number of Indiana decisions are cited in support of the general proposition that a statutory provision material to a contract is to be considered as a part thereof. Coggeshall v. State ex rel. Corder, 112 Ind. 561, 14 N.E. 555; Carr, Auditor v. State ex rel. Coetlosquet, 127 Ind. 204, 26 N.E. 778, 11 L.R.A. 370, 22 Am.St.Rep. 624.

■ We are not impressed with the City's argument that this statutory provision is without application. It is said that the statute is "obviously intended to apply to business operations." Even so, it appears plain that Citizens Gas contemplated and in fact did become engaged in "business operations" of great magnitude. There is nothing in the language of the statute which indicates that it was applicable to any particular class of corporation. According to its terms, it applies to "all companies * * * heretofore incorporated or hereafter incorporated within this state * * *." In this connection, it is pertinent to observe that Citizens Gas was incorporated under an Indiana statute entitled "An Act for the incorporation of manufacturing and mining companies and companies for mechanical, chemical and building purposes." Sec. 5064, Burns' Ind.Stat. 1908. Under this statute, it was provided that a corporation could be formed "to supply any city, town, village or community, with water, light, heat or power."

It is also urged that this statutory authority to mortgage did not become a part of the trust agreement for the reason that the donors of a public charitable trust have the power to fix the terms upon which the trust shall be administered and the rights and duties of the trustee. We assume this to be a general rule whether the trust be charitable or otherwise, but we fail to see how such rule makes the statutory provision inapplicable. We should think that the trust agreement could by appropriate language have deprived the trustee of the authority to mortgage for

any purpose, notwithstanding the statutory provisions under discussion. However, the trust agreement contains no such preclusion clause and we see no reason, in the absence of an express limitation in this respect, why the statutory provision which authorizes a corporation to mortgage its property did not become a part of the agreement. If so, the trustee had the express authority to execute the mortgage in question.

■ Furthermore, we are of the view that the trustee had the authority, irrespective of the statutory provision we have just discussed. This is true, notwithstanding the City's contention, supported by numerous authorities, that the power to mortgage a trust res for one purpose negatives the power to mortgage for any other purpose. Without citing or discussing such authorities, we think it may be said of them generally that the purpose for which it was sought to mortgage trust property was foreign to the purpose of the trust, or that the mortgage was not necessary to carry out the purpose of the trust.

This court, in Chase National Bank v. Citizens' Gas Company of Indianapolis, 113 F.2d 217, decided that Citizens Gas under this same trust agreement had the authority to acquire by purchase a 99-year lease from the Indianapolis Gas Company, its sole competitor in the gas field. In discussing the power of the trustee, we said (page 227 of 113 F.2d):

"The rule is that a trustee can properly exercise such powers as are conferred upon him in specific words by the terms of the trust or are necessary or appropriate to carry out the purposes of the trust and are not forbidden by the terms of the trust."

The implied power which we found was predicated upon the duty with which the trustee was charged "to supply the city of Indianapolis and its inhabitants with light, heat and power." It would appear that the implied power to borrow and mortgage was no less essential in accomplishing the purpose of the trust than the implied power to take over the business of a competitor. It is also reasonable to believe that those responsible for the creation of the trust were familiar with the statutory provision which authorized a corporation to borrow and mortgage, and for this reason failed to provide in the agreement express authority for so doing. In this con-

nection, it is pertinent to note that at the time of the execution of the trust agreement there was no statute in Indiana which authorized a corporation to mortgage its property for the purpose designated in the trust agreement, that is, to reimburse stockholders and donors for their contributions. This reasonably explains why only this specific authority to mortgage was included.

While it has little, if any, bearing upon the legal question involved, we think it is not improper to observe that with all the litigation which has been had concerning this trust agreement, the question of the power of the trustee to execute this mortgage has, so far as we are advised, never been raised until as a defense to this suit. It is also interesting to observe that subsequent to the original franchise agreement but prior to the execution of the mortgage, an amended ordinance was passed by the city council for the purpose of permitting the trustee to include the franchise as part of the security for money borrowed by the trustee. Of course, this did not confer power to mortgage if none theretofore existed, but it is a strong indication that all the parties to the trust agreement understood that such power existed. Otherwise, the amended ordinance which authorized the inclusion of the franchise was a useless gesture.

We shall now consider the issue as to whether the maturity date of the bonds was accelerated from July 1, 1942 to August 30, 1930, as urged by the defendants. As already pointed out, the City, after notice, deposited with its Controller (and still maintains such deposit) a sum sufficient to pay the principal and accrued interest to September 15, 1935. It is obvious, so we think, that if the bonds matured August 30, 1930, the City's tender constitutes a good defense. We do not understand that plaintiff contends to the contrary, but it is insisted that no acceleration took place.

While the bonds purport to become due and payable July 1, 1942, it was also provided that they were to "become due as provided in said mortgage." The mortgage provided:

"In the event that before the 30th day of August, 1930, either the franchise * * * ratified and approved by the Common Council and Mayor of said City on the 30th day of August, 1905, or any franchise substituted therefor in the manner hereinbefore provided, and not extending

beyond the date of maturity specified in the bonds issued hereunder, shall not be duly extended for a period extending beyond said date of maturity, then in such event * * * all the bonds issued hereunder and then outstanding shall forthwith upon said 30th day of August, 1930, become due and payable, anything contained herein or in the bonds issued hereunder notwithstanding, and said bonds shall thereupon become and be deemed to be matured debts of the Company."

No question is raised, in fact it is tacitly conceded, that this provision of the mortgage is binding upon the bondholders the same as though it were included in the bonds. In this connection, see Gillmor v. Indianapolis Gas Company, 7 Cir., 136 F.2d 925.

In 1913, Indiana enacted a law known as the Shively-Spencer Act, Acts 1913, c. 76, creating a Public Service Commission through which the regulatory power of the state over public utilities was to be exercised. This Act was amended in 1921, Acts 1921, c. 93. (The pertinent provisions of this Act and the amendment are set forth in Todd v. Citizens' Gas Company of Indianapolis, 7 Cir., 46 F.2d 855, 861, and need not be repeated.) In 1921, Citizens Gas filed with the Public Service Commission and the City a declaration of surrender of its franchise theretofore granted by the City, and thereupon was issued by the Commission an indeterminate permit in lieu of such franchise. (For further details in this respect, also see the Todd case, page 862 of 46 F.2d.)

It is plaintiff's position as stated in its brief that the acceleration provision of the mortgage "contemplated only the situation which might exist if the Citizens Gas Company would not have a franchise right to operate beyond the maturity date of the bonds and if the City should not exercise its right to take over the property as successor-trustee." It is further argued that no provision was made for acceleration in the event that the City took over. We are of the view that this contention is not sound. The franchise ordinance, which granted to Citizens Gas a 25-year privilege, became effective August 30, 1905, and provided: "Thereafter all rights of said company to occupy the streets and alleys of said city shall terminate and cease." The ordinance authorized the City at the expiration of the franchise period to take over the property, upon six months' notice

prior to its expiration. The City by appropriate notice declared its intention to take over on August 30, 1930, the date the original franchise would have expired. (The Todd case sustains the right of the City to take over, as provided in the franchise, notwithstanding that it was surrendered and replaced by the state's indeterminate permit, page 867 of 46 F.2d.)

To summarize, the franchise expired August 30, 1930, and the City had a right to take over at that time. The bonds were to mature August 30, 1930, unless Citizens Gas obtained an extension of its franchise beyond July 1, 1942. Certainly it could not have been within the contemplation of the parties that the franchise would or could have been extended beyond the date when the City exercised its authority to take over. It was only upon failure of the City to exercise such authority that there could have been any occasion for an extension. Inasmuch as the renewal of the franchise was dependent upon whether the City exercised its authority to take over, it would seem inevitably to follow that the bonds would have matured when the City exercised such authority and thereby eliminated any occasion or reason for the extension of the franchise.

We doubt if plaintiff would take serious issue with the view thus expressed. It is contended, however, that the indeterminate permit issued by the state in lieu of the surrendered franchise extended the rights of Citizens Gas beyond July 1, 1942. The effect of this contention is that such action changed the situation contemplated by the parties. It no doubt is true that the parties did not contemplate that the state would take over the regulatory power of public utilities. It does not follow, however, that the rights of the parties were altered thereby. In fact, as we have already held in the Todd case, the City was not deprived of its right to take over, as provided in the original franchise. Moreover, the Shively-Spencer Act which authorized the issuance of the state permit provided (see Todd case, page 861 of 46 F.2d):

"Every license, permit or franchise hereafter granted * * * shall have the effect of an indeterminate permit * * * and subject to the provision that the license, franchise or permit may be revoked by the commission for cause, or that the municipality * * * may purchase the property of such public utility * * *."

The Act, in defining the term "indeterminate permit," provided:

"* * * which shall continue in force until such time as the municipality shall exercise its option to purchase * * *."

It seems plain, therefore, that irrespective of the City's franchise right to take over, it was expressly granted such right by the state. We are unable to discern under such circumstances how it can be logically thought that the state permit was of indeterminate duration in the sense that the Citizens Gas had a right to do business indefinitely. The words "indeterminate permit" cannot be taken in their literal sense. In reality, the permit issued by the state was merely a conditional or contingent right. It authorized Citizens Gas to serve as a public utility until such time as the City elected to take over. When such election was made, the authority of Citizens Gas to operate terminated. Under the franchise granted by the City, the termination date was definitely fixed, while under the state permit it became certain upon exercise of the City's option to take over. All the rights of Citizens Gas were terminated in one instance just as effectively as in the other.

Neither do we think the situation is changed by the fact that Citizens Gas continued to operate under the indeterminate permit to September 9, 1935, when the City took conveyance and transfer of the property as successor trustee. True, Citizens Gas continued to pay the interest coupons up to and including January 1, 1935, as though the maturity date of the bonds had not been accelerated. As heretofore stated, the City served notice of its intention to take over six months prior to August 30, 1930, as provided in the franchise ordinance and as it had a right to do under the State Utility Act. During this period, as heretofore mentioned, litigation was pending, and the actual transfer of the property was delayed pending the result of such litigation. All the parties apparently were willing that the matter remain in status quo until the termination of the litigation. During this time, plaintiff, as well as all bondholders, was paid interest according to the tenor of the bonds. Under the circumstances, this delay in transferring the property, and the payment of interest during such delay, is not inconsistent with the claim that the bonds matured August 30, 1930. Furthermore, there is nothing in the circumstances to indicate that plain-

tiff and those for whom she sues suffered any injury by the delay in which they evidently acquiesced.

It is our conclusion, therefore, and we so hold, that the bonds matured August 30, 1930 and that the City's tender of payment of the principal amount of such bonds with interest to September 15, 1935 constitutes a valid defense to plaintiff's suit. The judgment is therefore affirmed.