## JACKSON v. THE STATE.

[No. 20,126. Filed June 2, 1903.]

CRIMINAL LAW.—*Judgment on Plea of Guilty.*—*New Trial.*—A motion for a new trial is ineffectual in a case where judgment has been rendered upon a plea of guilty. *p. 37.*

NEW TRIAL.—*Affidavits Taken in Foreign State.*—*Authenticity.*—Affidavits taken in a foreign state, in support of a motion for a new trial, will not receive faith and credit in the courts of this State unless authenticated in accordance with the requirements of §§483, 1865 Burns 1901. *p. 38.* ·

HOMICIDE.—*Murder.*—*Plea of Guilty.*—*Punishment.*—*Power of Jury.*— Where a defendant has pleaded guilty to the charge of murder committed while in the act of robbery, the jury are the exclusive judges as to whether the punishment shall be death or imprisonment for life, and their decision must stand unless it is manifest that they exceeded their powers. *p. 41.*

SAME.—*Murder.*—*Plea of Guilty.*—*Insanity of Defendant.*—*New Trial.*— Where a defendant, charged with murder committed while in the act of robbery, pleaded guilty, and a jury found him guilty and assessed the death penalty, a new trial will not be granted on the

ground of newly discovered evidence as to defendant's insanity, where the motion for a new trial shows nothing more than probable insanity six or eight months before the date of the crime. *pp. 42, 43.*

From Vanderburgh Circuit Court; *L. O. Rasch,* Judge.

William Jackson was convicted of murder in the first degree, and he appeals. *Affirmed.*

*W. W. Ireland* and *William Reister,* for appellant.

*C. W. Miller,* Attorney-General, *C. C. Hadley, L. G. Rothschild* and *W. C. Geake,* for State.

HADLEY, J.—The appellant was regularly indicted for the crime of murder in the first degree. To the indictment he pleaded guilty. Whereupon the court called the jury to assess his punishment. After hearing evidence, the argument of counsel, and under a proper charge by the court, the jury returned their verdict that appellant suffer death. Over appellant's motion for a new trial, the court rendered judgment upon the verdict. The overruling of the motion for a new trial is the only assignment in this court, and the grounds are that the verdict is contrary to law, and contrary to the evidence, and because of newly discovered evidence.

At the very threshold we are met by the suggestion of the Attorney-General that no question has been properly reserved for the decision of this court. It is well settled in this State that a motion for a new trial is ineffectual in a case where judgment has been rendered upon a plea of guilty. The reasons are twofold: (1) Because there can be no new trial of a case where there has been no trial at all; and (2) a judgment upon a plea of guilty rests upon the same foundation as judgments in civil cases by default or confession. In either case the judgment must follow the confession or plea of guilty, and is conclusive until vacated by a withdrawal, or a setting aside of the

plea of guilty or confession. *Meyers* v. *State,* 156 Ind. ·388, and cases cited.

Assuming, however, that the motion for a new trial properly presents the question of newly discovered evidence, we should be compelled to hold that there were no affidavits in support of the motion, as required by many decisions of this court (*Barnett* v. *State,* 141 Ind. 149, and cases cited), for the reason that what purports to be affidavits taken in the state of Tennessee are not authenticated in accordance with the requirements of §§483 and 1865 Burns 1901, and can not therefore be received and used as such in the courts of this State.

Authority to take and certify affidavits does not belong to the office of notary public at common law, but whether it does or not is immaterial, since a legislative enactment is paramount to the common law, and the above statute specifically prescribes how an affidavit taken in a foreign state must come authenticated to receive faith and credit in our courts. It is provided that an affidavit shall be subscribed and certified by the officer, or justice of the peace, under his hand and seal of office, if he have one, and attested by the clerk, who shall also certify that such officer, or justice of the peace, is by the laws of said state empowered to administer oaths and take affidavits. The fixing of the specific mode of authentication must be held to exclude all other modes, and hence the courts have no authority to heed an affidavit that is not vouched in the manner provided by law. *Teutonia Loan, etc., Co.* v. *Turrell,* 19 Ind. App. 469, 65 Am. St. 419. In this case certain statements of fact appear in the transcript which purport to have been executed in Davidson county, state of Tennessee, and subscribed by certain named persons, to which was appended the following: "Subscribed and sworn to before me this February 18, 1903. J. C. Napier, notary public." No seal accompanies what is claimed to be the official signature. Neither is it attested,

nor· is the power of the officer, under the laws of Tennessee, to take affidavits, certified by the clerk. They were therefore ineffectual as affidavits, and entitled to no greater consideration than unsworn statements. The newly discovered evidence, therefore, was not brought before the court in such a way as warranted its consideration.

We are, however, induced, by the gravity of the judgment, to pass by the infirmities of the record, and consider the merits of the case on the contention that the verdict of the jury is contrary to law and the evidence. It appearing that appellant had no means with which to procure the services of a legal advisor, the court assigned him competent and experienced counsel, and after his plea of guilty—to enable his attorney fully to acquaint himself with the facts—continued the cause for one week before submitting the question of punishment to the jury. Upon the submission to the jury, appellant appeared by attorney, testified in his own behalf, and cross-examined divers witnesses introduced by the State. It is shown that between 1 and 2 o'clock a. m. of Sunday, January 25, 1903, Allen Blankenship was found dead in the engine room of Melrose mill, in the city of Evansville. Blankenship had been employed as night-watchman of the mill. The body was still warm and bleeding from the nose. The top and back part of the head had been crushed and fractured into many pieces by some blunt instrument. Appellant Jackson was arrested on the following day for the homicide. On the second day after his arrest he made to the chief and other police officers what purports to be a full and detailed confession, which in many important particulars was fully corroborated by other witnesses.

The facts as related by appellant to the officers, and while testifying as a witness in his own behalf, are as follows: Appellant, fifty-one years of age, came to Evansville from the state of Tennessee in July, 1902. He was steadily employed by a street contractor in Evansville from

the time of his arrival to the last of September, 1902.
On the 1st day of October he accepted employment in the
Melrose mill, where he continuously worked until one week
before the assault. He was well acquainted and on friendly
terms with Blankenship, and knew that the employes of
the mill received their wages on Saturday evenings. On
Saturday, January 24, the day before the homicide, Jack-
son was idle, and spent the day playing policy and drink-
ing whisky and beer. On Saturday night he was not drunk,
but under the influence of liquor. About 7 o'clock in the
evening he formed the purpose of going to the Melrose
mill and robbing Blankenship of the wages he had received
during the day. He went to the mill, found Blankenship
in the engine room, engaged him in conversation for some
time, then went across the street to a saloon where he
drank some more whisky, and about 9 o'clock returned to
the mill and found Blankenship about starting upon his
round of inspection. Upon being invited by the latter to
accompany him, he did so, and in passing through an
upper story they found two men engaged in repairing a
belt. The two returned to the engine room where Jackson
sat down and Blankenship went to work cleaning the en-
gine and doing other jobs about the room. About 11 o'clock
the two men engaged in repairing the belt came downstairs
and went away. Soon thereafter Blankenship sat down,
ate his midnight lunch, took a smoke, and then dropped
his head "as if dozing off." While in this position Jack-
son picked up a piece of iron three inches broad and eight-
een inches long and struck the deceased two violent blows,
one on the back of the head and the other on the top.
Blankenship fell to the floor, whereupon Jackson hurriedly
thrust his hand into the former's pockets, and taking there-
from $3.90, left the mill. He went to a saloon, got a half
pint of brandy, and then repaired to his room and to bed.
He spent the day (Sunday) in the city, heard the death

of Blankenship talked about, and in the forenoon of the next day, Monday, January 26, 1903, he was arrested, charged with the crime of murder. On the day of his arrest he stoutly asserted his innocence, and disclaimed any knowledge of the crime; but upon the second day, on being confronted by some incriminating facts, acknowledged his guilt, and unhesitatingly gave the foregoing account of the deed.

Appellant claims that Blankenship was one of the best friends he had in Evansville—had worked in the same mill with him for three months—and declares that he was seized with an uncontrollable purpose to rob him. Upon the witness-stand he modified his former statement by asserting that he first conceived the robbery when he saw the deceased "dozing off" in his chair, and that, immediately upon conceiving the design, he seized a piece of iron and struck the fatal blows. From the account thus given of the crime, and the conduct of the prisoner on the witness-stand, counsel for appellant urge that the jury had before it, and particularly the court on the motion for a new trial, sufficient evidence of mental unsoundness to make the death penalty an unreasonable and unjustifiable punishment. The legislature has provided that "Whoever * * * in the perpetration of * * * any robbery * * * kills any human being, is guilty of murder in the first degree, and upon conviction thereof, shall suffer death or be imprisoned in the State's prison during life, in the discretion of the jury." §1977 Burns 1901. The defendant under this statute pleaded guilty of murder in the first degree, and was sent to the jury, the exclusive judges in such cases, to have his punishment determined by that body in the exercise of its sound discretion. The statute does not attempt to define or advise the jury what class of facts shall justify the one, and what class the other punishment. The jury must from the whole case decide for themselves,

and their decision must stand, unless it is manifest that they have exceeded their power.   See *Shields* v. *State,* 149 Ind. 395.

We have carefully examined the evidence as contained in the bill of exceptions, and also the exhibits filed with the motion for a new trial, and find nothing to raise a reasonable doubt as to appellant's sanity at the time he committed the homicide, or that the act was anything less than a wanton destruction of life for the purpose of robbery.

Counsel for appellant, in his effort to show diligence in procuring the newly discovered evidence, deposes that after his appointment, and before the submission of the defendant's punishment to the jury, he made diligent inquiry among the friends and acquaintances of the defendant in the city of Evansville, and found nothing that would warrant the filing of a plea of insanity.   Appellant had lived in Evansville for six months, and had been all the time steadily employed with gangs of men on the streets, and in Melrose mill, and it seems improbable that he should have been of unsound mind during that period and not have manifested it in some way to his associates.   Four residents of the city of Nashville submit a verified statement that they had known Jackson for ten years while the latter was a member of the fire department of said city, and that for two or three years last past his conduct and manner had changed; that he was nervous, and seemed restless, forgetful, and indifferent to his business, and each expressed the opinion "that there was something wrong with his mind."   Not one of them expressed the opinion that Jackson was of unsound mind, or that they would so testify if called upon to do so.   Jackson's abandoned wife made a statement to the same effect, but expressed no opinion as to his mental condition.   Doctor Noel, of Nashville, Tennessee, who had known Jackson for twelve or fifteen years, had for two or three years observed that

Jackson *v.* State.

Jackson's conduct and manner were changed; the doctor had treated him for "a spell of inflammation of the brain," and noticed "that thereafter Jackson would stand around on the street corners, in winter, without sufficient clothing," and was nervous. This affiant thought that Jackson, when he left Tennessee eight months before, was of unsound mind. It also appears from the record that doctor Busse, of Evansville, upon request, made two separate examinations of the defendant, after his arrest, with a view of ascertaining the condition of his mind, and if he made any affidavit, or report of his examination, it failed to get in the record. Assuming that all the things stated by the residents of Tennessee were true, they are by no means conclusive of mental impairment. They might have existed from many other causes, and the inability of the prisoner to prove the existence of any such characteristics at any recent date is strong reason for believing that the efficient cause of such changed conduct and manner was removed by his departure from Tennessee in May, 1902. At most, proof of such acts prior to May, 1902, standing alone, would not be sufficient to sustain a finding of insanity on January 25, 1903.

Finally, after a careful consideration of the whole case, we are forced to conclude that it does not appear that the appellant was in any respect deprived of a full, fair, and impartial administration of the law, and the judgment must therefore be affirmed. Judgment affirmed.