IN THE MATTER OF FILIPIAK; RE DISBARMENT.

[No. 28,897.   Filed June 16, 1953.]

*Albert H. Gavit,* of Gary, for defendant.

*Charles C. Baker,* of Indianapolis, *Chester Bielby,* of Lawrenceburg, *Wilbur F. Dassel,* of Evansville, *Robert H. Moore,* of Gary, and *James R. Newkirk,* of Fort Wayne, members of the Disciplinary Commission of the Supreme Court.

BOBBITT, C. J.—This proceeding was commenced by the filing of an information in revocation of admission to practice law as an attorney by the Disciplinary Com-

mission appointed by this court under Rule 3-21 thereof. Defendant filed his answer denying the material allegations of the information.

The Hon. Dan Pyle, Judge of the St. Joseph Circuit Court, was subsequently appointed as commissioner to hear evidence and report his findings of fact thereon. After due notice, a hearing was held on December 1 and 2, 1952, in Crown Point, Indiana, at which the Disciplinary Commission and the defendant were represented by able and competent counsel.

On February 13, 1953, the commissioner filed his report and findings of fact. Such findings disclosed that defendant did not act dishonestly or corruptly, but was not "careful and meticulous" in the making of his records as Judge of the Juvenile Court of Lake County, at the times mentioned in the information, and that all of the acts relating to the matters herein were performed by him in his capacity as Judge of the Juvenile Court and not as an attorney. The commissioner further found that the allegations of the information were not supported by a preponderance of the evidence.

To this report the Disciplinary Commission filed exceptions.

Rule 3-24 of this court pertaining to disciplinary proceedings provides that if a material issue of fact is formed, this court will appoint "one or more commissioners to hear and report the evidence and to make findings of fact, to which exceptions may be taken . . . ." Such commissioner is given power to fix the time and place of the hearing, administer oaths, subpoena witnesses, and order the taking of depositions.

The above provisions of Rule 3-24 require the com-

missioner to file and report the facts for the use of this court. The facts as reported by the commissioner will be presumed to be correct until the contrary is shown.

The burden was upon the Disciplinary Commission to prove the allegations of the information by a preponderance of the evidence. The commissioner's report shows that it failed to sustain this burden.

We have carefully examined the exceptions to the commissioner's report and in our opinion they are not sufficient to overcome the presumption of verity which attaches to the commissioner's findings of fact.

An examination of the evidence discloses nothing upon which we could justify a refusal to accept the facts as found by the experienced and able jurist who served as commissioner.

Upon the facts as found by the commissioner this court finds that the defendant, Anthony A. Filipiak, should not be disbarred from the practice of law in Indiana.

The petition herein is denied and the costs incurred in connection therewith are assessed against the State of Indiana.

Draper, J., not participating.

Emmert, J., concurs in result with opinion.

Gilkison, J., dissents with opinion.

### CONCURRING OPINION

EMMERT, J.—The defendant, Anthony A. Filipiak, was charged, in substance, with having entered into a conspiracy with Blaz A. Lucas[1] and Bryan Narcowich,

---

1. The information was filed here March 5, 1952. Blaz A. Lucas was disbarred by this court on January 17, 1952. See *In re Lucas* (1952), 230 Ind. 254, 102 N. E. 2d 909. Lucas had previously been convicted of conspiracy to violate the National Prohibition Act of the United States, and had served a year and a day in the federal penitentiary. *Lucas* v. *McAfee* (1940), 217 Ind. 534, 536, 29 N. E. 2d 403, 29 N. E. 2d 588.

attorneys of this bar and state, to free one Joseph Kaczka from serving a sentence in the Indiana State Farm for six months, for a financial consideration in the sum of $600.00.

It is not possible to obtain the full picture of the factual situation from the findings of facts made by the Commissioner, and it has been necessary to refer to the record of the evidence received in order to relate the history of the controversy. I agree with the Commissioner's finding of facts that there was no case proved that the defendant acted dishonestly or corruptly. There is no proof that the defendant knew anything about the payment of any fee, either to Lucas or Narcowich. What was proved was judicial stupidity of a high order. When a judge in a criminal matter acts without jurisdiction to set aside a judgment of imprisonment and then enters a suspended sentence he invites suspicion that he has acted corruptly. There were violations of some of the Canons of Judicial Ethics of the American Bar Association, and because these canons were violated it is proper to note them by an opinion.

The defendant was a judge of the Juvenile Court of Lake County. On April 6, 1950, in Cause No. 4432, Joseph Kaczka pleaded guilty to a charge of contributing to delinquency, upon which judgment was pronounced that he be imprisoned in the State Farm for a term of six months, and pay a fine in the sum of $100 and costs. In this proceeding the State was represented by Deputy Prosecuting Attorney Obermiller of Lake County. Kaczka was transported to and imprisoned in the Indiana State Farm.

On April 21, 1950, Blaz Lucas, who was then a deputy prosecuting attorney of Lake County, telephoned the defendant Filipiak. Lucas asked for a new trial for

the prisoner, and the defendant made the following minutes: "Comes now Atty. Blaz Lucas and files motion for new trial. Motion granted. Sheriff of Lake County ordered to return the def Joseph Kaczka and have him in court on April 28th, 1950 at 10 A. M." This minute was signed by the defendant judge.[2] The defendant insisted that he inserted on the minute book immediately after the words "Motion granted," the following: "Motion to be heard on April 28 - 50." It is not necessary for us to decide when this insertion was made, since he was not charged with making this as a false entry.

Thereafter the defendant informed Lucas he could not act as attorney in the matter, since he was a deputy prosecuting attorney. Lucas had been paid the sum of $300 by the sister of Joseph Kaczka, with the understanding he would receive another $300 if the motion for new trial resulted in a suspended sentence. Lucas refused to give any receipt for this money. A bondsman by the name of Henry Sero had first contacted Kaczka's sister, and he was present when the $300 in cash was paid.

After Lucas was informed he could not represent the prisoner, Henry Sero made arrangements with Bryan Narcowich to represent the prisoner, and he prepared a motion for new trial which was filed with the papers in the cause, and he later received between $200 and $300 paid by Sero as agent for Kaczka's sister.

---

2. It was stipulated by the Disciplinary Commission and counsel for the defendant that the order book entry of this date shows the following: "April 21, 1950. Comes now Blaz Lucas attorney and files motion for new trial in this cause which motion is by the court granted and it is now by the court ordered that the Sheriff of Lake County, return the defendant herein from the Indiana Farm and surrender him in court on the 28th day of April, 1950, at 10:00 o'clock."

Narcowich and Lucas had offices in the same building and floor and hallway thereof. Narcowich had no stenographer, and Mrs. Lucas typed both motions for a new trial. Both motions stated the same three causes,

"1. For newly discovered evidence material to this defendant which could not with reasonable deligence have discovered and produced at the trial.

"2. Accident and surprise which ordinary prudence on the part of this defendant and his counsel could not have foreseen or prevented.

"3. That the judgment of the court was against the weight of the evidence that the finding of the court was excessive."

Narcowich appeared in open court on April 28th, and filed the motion for a new trial.

The order book entry of April 28th fails to state that a new trial was granted. It erroneously referred to the matter as a rehearing. It found the defendant guilty and that he should be sentenced to serve six months at the Indiana State Farm, and be fined in the sum of $300 and that the sentence should be suspended. The judgment did not recite that the defendant be imprisoned or that he pay the fine but it did state, "It is therefore considered, ordered, adjudged and decreed by the court that the serving of said State Farm sentence and the paying of said fine be and the *and the* same are hereby suspended and defendant ordered placed on probation to the Probation Department of this court. Defendant ordered released from Sheriff of Lake County. April 28, 1950."

We have held that even though a petition be designated as a motion for new trial, it may be considered as a petition for writ of error *coram nobis,* if it is in substance such a petition. *Sharp* v. *State* (1939), 215 Ind. 505, 19 N. E. 2d 942. Under no possible construction could either one of these motions for a new trial

be considered a petition for a writ of error *coram nobis.*
There had been no trial, since the prisoner had pleaded
guilty. The motion for a new trial presented nothing
under such circumstances. *Carr* v. *State* (1924), 194
Ind. 162, 142 N. E. 378; *Jackson* v. *State* (1903), 161
Ind. 36, 67 N. E. 690; *Meyers* v. *State* (1901), 156 Ind.
388, 59 N. E. 1052; *Trattner* v. *State* (1916), 185 Ind.
188, 113 N. E. 243. Section 9-2209, Burns' 1942 Re-
placement, provides that "The court may not suspend
the execution of sentence after the defendant shall have
commenced to serve his sentence of imprisonment."
This prohibits a suspension of sentence even during the
same term if the prisoner has commenced to serve his
sentence. *State ex rel. Steers, Attorney General* v.
*Criminal Court of Lake County* (1953), 223 Ind. 443,
112 N. E. 2d 445.

There was no proof that the defendant Filipiak was
to receive any part of any fee or money for sustaining
a motion for new trial, or changing the judgment. His
assertion of innocence in this matter is corroborated
by the fact that subsequently he did revoke the sus-
pended sentence, and the prisoner was imprisoned for
six months in the Indiana State Farm.

However, the defendant's judicial conduct falls very
short of the proper standards laid down by the Canons
of Judicial Ethics. Canon 4 provides:

> "A judge's official conduct should be free from
> impropriety and the appearance of impropriety;
> he should avoid infractions of law; and his personal
> behavior, not only upon the Bench and in the per-
> formance of judicial duties, but also in his every
> day life, should be beyond reproach."

Canon 17 states:

> "He should not permit private interviews, argu-
> ments or communications designed to influence his
> judicial action, where interests to be affected

thereby are not represented before him, except in cases where provision is made by law for *ex parte* application."

I believe the evidence here clearly shows the defendant agreed to grant the motion for new trial *ex parte* before the matter was presented to him in open court. It is not a situation where a lawyer seeks the advice of the judge as to the proper manner in which to proceed. Here the judge prejudged the merits of a very serious proceeding. He promised to do an act that was void for want of jurisdiction. The defendant contends that his intentions in the matter were good. What he did he made a matter of public record. Under such circumstances I do not believe his mistaken idea as to his rights, powers and duties discloses anything more than ignorance of law, and a failure to appreciate that judges of juvenile courts, when they act in criminal matters, as this was, are bound by the same rules as a circuit court exercising criminal jurisdiction. We should not disbar a member of the legal profession on mere suspicion, or proof of only opportunity to act in violation of the high standards of our profession. The breach of judicial ethics was serious, but the facts in this case did not prove a lack of morality which would make the defendant unfit in character to practice law. For these reasons I do not believe the defendant should be disbarred, but he is subject to censure for his violation of judicial ethics.

## DISSENTING OPINION

GILKISON, J.—I am in dissent with the majority opinion. It fails to note both the facts of the case and the law applicable thereto, for the bench, bar and the public. For that reason it becomes necessary for me to supply the same at some length, in order to give the

causes which I think should govern our decision and therefore the reasons for my dissent. They are as follows:

On March 5, 1952, the Disciplinary Commission, created agreeable with Rule 3-21 of this court, filed its properly verified information in triplicate in the office of the Clerk of the Supreme Court of the State of Indiana, charging the above named Anthony A. Filipiak as an attorney at law of this state with certain acts of alleged misfeasance and malfeasance. Thereafter, proper notice of the filing of such information with a copy thereof was issued by the clerk, to the Sheriff of Lake County, Indiana, who was made a deputy sheriff of this court for the purpose of serving the notice. It was duly served on the accused, on March 13, 1952, as is fully shown by the return of the sheriff of that date.

Thereafter, on March 20, 1952, accused filed his answer to the information in denial of rhetorical paragraphs I and III, admitting rhetorical paragraph II, denying any conspiracy and affirmatively answering rhetorical paragraph IV and IV-a through IV-g, by explanation.

The information avers that the accused is an attorney-at-law, having been admitted regularly as such by this court, and that he is now the presiding judge of the Juvenile Court of Lake County, Indiana.

I. That he has violated his duty as an attorney and officer of the court as prescribed by the laws, and has violated his oath as an attorney as defined by the rules of the court and has been guilty of acts of immoral conduct, corruption and dishonesty and has wilfully and wantonly contravened the ethics of the legal profession by entering into and becoming a part of, and an actor in an illegal conspiracy as follows:

II. On April 6, 1950 while said Anthony A. Filipiak was serving as Judge of the Juvenile Court of Lake County, Indiana, one Joseph Kaczka entered his plea of guilty to a charge of contributing to the delinquency of a minor, then pending in said court, and upon such plea said judge sentenced said defendant to serve six months on the Indiana State Farm, to make his fine to the State in the penal sum of one hundred dollars ($100) and to pay the costs of the prosecution, and upon this judgment such defendant was committed to the Indiana State Farm.

III. That within a short time after such imprisonment, said Filipiak as such Judge, together with an attorney, Bryan Narcowich and a deputy prosecuting attorney, Blaz A. Lucas, entered into a conspiracy to free said Joseph Kaczka from serving said sentence, for a financial consideration, the exact amount of which is unknown, but upon which the sum of six hundred dollars ($600) was paid.

IV. That in furtherance of the conspiracy and with intent to accomplish the unlawful purpose and to conceal the conspiracy, said actors committed overt acts as follows:

(a) The conspirator, Lucas, called Filipiak on the telephone and in the conversation Filipiak, as such Judge, agreed to grant Joseph Kaczka a new trial on a motion therefor to be thereafter filed by Lucas.

(b) That Lucas received from the family of Joseph Kaczka the sum of six hundred dollars ($600) in payment for the freeing of Kaczka.

(c) On April 21, 1950, Filipiak, as such Judge, permitted Lucas, whom he knew to be a deputy prosecuting attorney, to file in his court a motion for new trial for Kaczka and without any hearing thereon, granted the motion and ordered Kaczka to be returned

from the Indiana State Farm to his court for further consideration of his case on April 28, 1950.

(d)   On that date, April 28, 1950, in obedience to said order, Kaczka appeared in court before Filipiak, its judge, in person and by his supposed attorney, Bryan S. Narcowich, and again entered his plea of guilty to the charge of contributing to the delinquency of a minor. Filipiak, as Judge of said court, then adjudged and sentenced Kaczka to pay a fine of three hundred dollars ($300) and to serve six months on the Indiana State Farm, and then suspended both the fine and sentence, and ordered Kaczka placed on probation to the probation department of his court, and ordered that he be released from the custody of the sheriff.

(e)   That Filipiak and Narcowich in furtherance of said conspiracy, on June 11, 1951, attempted to falsify and change the record in the Kaczka case to make it read:

"Comes now Bryan S. Narcowich, attorney, and asks the court to correct the record in Cause No. 4432 (that being the case aforesaid of State v. Joseph Kaczka) which record shows the appearance of Blaz A. Lucas for the defendant and the filing of a motion for a new trial by Blaz A. Lucas for the defendant, said record should show the appearance of Bryan S. Narcowich and the filing of a motion for new trial by Bryan S. Narcowich."

All of which was done in furtherance of said conspiracy and in an effort to conceal same.

(f)   Is a charge that Narcowich swore falsely concerning the Kaczka matter before a commissioner of this court who was engaged in taking evidence in Lake County in the Lucas disbarment proceeding, all in furtherance of the alleged conspiracy.

(g)   Is a charge that in the furtherance of said conspiracy, Filipiak swore falsely concerning the Kaczka

matter before a commissioner of this court who was engaged in taking evidence in Lake County in the Lucas disbarment proceeding on August 11, 1951, which false evidence was as follows: "That there was a motion for new trial in the Joseph Kaczka case aforesaid filed by Narcowich. That there were two motions for new trial filed for Joseph Kaczka, one by Lucas and one by Narcowich."

In his verified answer to IV-a the accused admits that Blaz Lucas called him by telephone, and that he told Lucas he would grant Kaczka a new trial. He denies that he knew Lucas was disqualified from representing the defendant, Kaczka in his court.

(b) He says he does not know what fee was paid to Lucas or when it was paid, and denies that there was any unlawful freeing of Kaczka.

(c) He admits that on April 21, 1950, a motion for new trial was filed for Kaczka by Lucas. He admits that at that time Lucas was a deputy prosecuting attorney for Lake County, but says Lucas was exclusively assigned to the city court of Gary.

He admits his order book entry of that day in said cause reads:

"April 21, 1950. Comes now Blaz Lucas, attorney and files motion for new trial in this cause which motion is by the court granted and it is now by the court ordered that the Sheriff of Lake County, return the defendant herein from the Indiana Farm and surrender him in court on the 28th day of April, 1950, at 10:00 o'clock."

He says he thereby intended to order a hearing on the application for April 28, 1950.

(d) He says attorney, Narcowich, appeared before him and argued for a new trial (for Kaczka) on April 28, 1950. He claims he heard evidence, increased the

fine to $300 and "resentenced him to six months imprisonment and suspended both the fine and sentence." He does not contend that Kaczka's plea of guilty entered in his court April 6, 1950, was ever withdrawn, or otherwise nullified in any manner known to the law.

He claims his docket entry of April 28, 1950 is as follows:

"Defendant appears in person and with his atty. Bryan S. Narcowich. Sub. for argument on motion for new trial. New trial granted. Defendant now appears in person and by his atty. Bryan S. Narcowich. Cause Sub. Ev. Hd. Finding that deft is guilty as charged and that he should be sentenced to serve 6 months at the Indiana State Farm and to pay a fine of $300 and costs. Judgment. Deft ordered placed on probation to the Prob. Dept. of this Court. Deft ordered released from the custody of Sheriff of Lake County, Indiana."

There is no pretense that the state appeared or that it had either notice or knowledge of this proceeding.

(e) He denies that he ever attempted to falsify the records of his court. He said Attorney Narcowich "made a motion or request for a correction in cause No. 4432" (The Kaczka case) "and that he as judge memoralized that request and motion by the order heretofore quoted in IV-e."

He says he did not rule on this motion. That on April 28, 1950, attorney Narcowich presented a motion for new trial that was signed by Narcowich.

(f) He admits he testified as alleged. He believed there were two motions for new trial. He says he testified for the "commission" in the Lucas case and told the truth.

"A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose

not in itself unlawful by unlawful means." 15 C. J. S., §1, p. 996.

*Williams* v. *Citizens Gas Co.* (1933), 206 Ind. 448, 460, 188 N. E. 212. *Karges Furniture Co.* v. *Amalgamated, etc., Union* (1905), 165 Ind. 421, 424, 75 N. E. 877, 2 L. R. A. N. S. 788. *Hamilton* v. *Cooley* (1933), 99 Ind. App. 1, 11, 184 N. E. 568, 187 N. E. 762.

A criminal conspiracy is more difficult to define. Our court has said:

> ". . . It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to do the acts and commit the offense, though the agreement is not manifest by any formal words. Concurrence of sentiment and co-operative conduct in the unlawful and criminal enterprise are the essential ingredients of criminal conspiracy. There must be an agreement . . . or such a state of facts that an agreement may be legally inferred." *Coughlin* v. *State* (1950), 228 Ind. 393, 395, 92 N. E. 2d 718.

Whether the conspiracy charged in the complaint of the Disciplinary Commission was a civil or a criminal conspiracy cannot matter in this proceeding, since it was clearly for the accomplishment of an unlawful purpose—the liberation of a convict from the Indiana State Farm (commonly called the Penal Farm) and his release from the payment of a $100 fine *for a cash consideration.* In his verified answer to IV-a, accused admits that attorney, Lucas, called him by telephone and asked him to grant Kaczka a new trial and he (the accused) agreed to do so. This is the unlawful agreement, admitted by the accused. Here we have a judge of a court with jurisdiction in certain criminal cases (§9-2804 Burns' 1942 Repl.) agreeing over the telephone with a deputy prosecutor, (who was unlawfully representing a state farm prisoner as the judge well knew), that he, the judge, would grant a motion for

new trial for the prisoner. This agreement was made without even the knowledge of the state. This unlawful agreement was fully performed by the accused as is conclusively shown by the intrinsic record of his court. In view of the admission by accused with respect to this agreement and his careful performance of his part thereof, the supposed appearance of attorney, Narcowich for Kaczka, more than a week after the agreement was made (without the knowledge of Kaczka or any of his people) and his argument for a new trial before the accused in the absence of any representative of the state and a week after the motion for new trial had been granted, seems quite purile. The pretense that the accused then heard evidence without any change in defendant's plea and without any notice to or knowledge of the state is equally unbelievable.

We note from the record that the motion for new trial supposedly filed by attorney Narcowich is an exact copy of the motion for new trial filed by Lucas many days before. One seems to be a carbon copy of the other, and neither states any lawful cause for new trial.

The motion filed by Lucas on April 21, 1950 is signed with the name of "Joseph A. Kaczka" above the type-written word "Defendant."

The motion filed by Narcowich was noted filed by the clerk of the Lake Juvenile Court, on June 11, 1951, and not on April 28, 1950 as testified to by the accused. It is signed by "Bryan S. Narcowich" above the type-written word "Defendant." It is not signed by him as an attorney, but as a defendant.

The motion for new trial filed by Lucas with the clerk's notation thereon as shown by the photostatic copy thereof, numbered "Deft. F's Ex. 5" and made a part of the record in the cause before us, is as follows:

"RECEIVED April 21 1950
Juvenile Court, Lake County
Gary, Indiana

"State of Indiana     )              In the Juvenile Court,
                     ) ss:        Lake County, Indiana.
County of Lake       )               Cause No. *4432*

"FILED IN OPEN COURT
Apr 21 1950
Bartel Zandstra
Clerk Lake Juvenile Court

"State of Indiana
vs
Joseph Kaczka          ·          Motion for New Trial

"Comes now the defendant in the above entitled cause and moves the court for new trial for the following grounds and reasons:

"1.  For newly discovered evidence material to this defendant which could not with reasonable deligence have discovered and produced at the trial.

"2.  Accident and surprise which ordinary prudence on the part of this defendant and his counsel could not have forseen or prevented.

"3.  That the judgment of the court was against the weight of the evidence that the finding of the court was excessive.

"WHEREFORE, defendant prays the court for a new trial of this cause.

"Joseph A. Kaczka
Defendant."

The motion for new trial filed by Narcowich with the clerk's notation thereon as shown by the photostatic copy thereof, numbered "Deft. F Ex. 2" and made a part of the record in the cause before us, filed in accused's court on June 11, 1951, is as follows:

"REC'D THIS DATE
"FILED IN OPEN COURT
JUN 11 1951
"Bartel Zandstra
Clerk Lake Juvenile Court

"State of Indiana  )      In the Juvenile Court,
             ) ss:  Lake County, Indiana
County of Lake  )       Cause No. 4432

"State of Indiana
    vs
Joseph Kaczka     MOTION FOR NEW TRIAL

"Comes now the defendant in the above entitled cause and moves the court for new trial for the following grounds and reasons:

"1. For newly discovered evidence material to this defendant which could not with reasonable deligence have discovered and produced at the trial.

"2. Accident and surprise which ordinary prudence on the part of this defendant and his counsel could not have forseen or prevented.

"3. That the judgment of the court was against the weight of the evidence that the finding of the court was excessive.

"WHEREFORE, defendant prays the court for a new trial of this cause.
                  "Bryan S. Narcowich
                    Defendant."

The two motions for new trial with the clerk's notation thereon tell an appalling story of truth concerning the "tangled web" woven by the conspirators, when probable detection of their scheme appeared upon the scene. This seems to have occurred about June 11, 1951. We are indebted to the clerk of the Lake Juvenile Court for this date, for on that date the Narcowich motion for new trial was filed as is conclusively shown by the clerk's official stamped notation thereon. Of course, the accused swore falsely when he said this motion was filed on April 28, 1950. At that time, April 28, 1950, the record conclusively shows that the only motion for new trial in the Kaczka case before the accused, was the Lucas motion signed with the name of Kaczka and which was filed on April 21, 1950, and granted on that

date. I note that in the Lucas motion for new trial filed April 21, 1950, in reason 1, the word "diligence" is misspelled, thus, "deligence". In the Narcowich motion for new trial filed June 11, 1951, I find the same error in spelling. I further note that each line of the two motions have precisely the same words in them. They are each written in small elite type. These undisputed facts definitely fix and determine the connecttion of the three conspirators, and definitely show the perjury of the accused.

In Indiana and all the other states and in the United States Supreme Court the general rule is that when two or more persons have conspired to commit an offense, everything said, done or written by one of them during the existence of the conspiracy, and in the execution or furtherance of the common purpose, is admissible in evidence against the others. 22 C. J. S., Criminal Law, §754 p. 1288. *Hicks* v. *State* (1937), 213 Ind. 277, 287, 11 N. E. 2d 171, 12 N. E. 2d 501. *Workman* v. *State* (1939), 216 Ind. 68, 74, 21 N. E. 2d 712. *Breaz* v. *State* (1938), 214 Ind. 31, 34, 13 N. E. 2d 952. *Sanderson* v. *State* (1907), 169 Ind. 301, 313, 82 N. E. 525.

It is true of the element of conspiracy, that it is not usually proved by direct evidence, but is inferred from circumstances.

Dr. Wharton says:

"The actual fact of conspiring may be inferred, as has been said, from circumstances, and the concurring conduct of the defendants need not be directly proved. Any joint action on a material point, or a collocation of independent but cooperative acts, by persons closely associated with each other, is held to be sufficient to enable the jury to infer concurrence of sentiment." 2 Whart. Crim. Law (9th ed.) Section 1398; Whart. Crim. Ev. Section 698; 2 Bishop Crim. Proc., section 227.

*Archer* v. *The State* (1886), 106 Ind. 426, 432, 7 N. E. 225. *Musser* v. *State* (1901), 157 Ind. 423, 433 and authorities cited, 61 N. E. 1. Ewbank's Ind. Crim. Law (2d Ed.) Sec. 1652, p. 1197, and many Indiana cases there cited.

The answer of respondent admits that in a telephone conversation he agreed with Blaz Lucas that he would grant Kaczka a new trial when and if Lucas would file the motion. The evidence taken by our commissioner conclusively shows the same agreement between these conspirators. Thus the existence of the conspiracy is shown, not only prima facie, but conclusively.

". . . after prima facie proof of the existence of the conspiracy has been introduced the overt acts and declarations of any conspirator are admissible against each of them, including overt acts and declarations of any one or more of the conspirators while engaged in the common purpose." Ewbank's Indiana Crim. Law (2d. Ed.) Sec. 1652, p. 1198. *Reinhold* v. *The State* (1891), 130 Ind. 467, 30 N. E. 306. *Card* v. *State* (1886), 109 Ind. 415, 418 and authorities cited, 9 N. E. 591. *Berry* v. *State* (1929), 202 Ind. 294, 302, 165 N. E. 61, 173 N. E. 705, 72 A. L. R. 1177.

Greenleaf states the rule thus:

"The *evidence* in proof of a conspiracy, will generally, from the nature of the case, be *circumstantial*. Though the common design is the essence of the charge, it is not necessary to prove that the defendants came together and actually agreed, in terms, to have that design, and to pursue it by common means. If it be proved that the defendants pursued by their acts the same object, often by the same means, one performing one part and another another part of same, so as to complete it, with a view to the attainment of that same object, the Jury will be justified in the conclusion, that they were engaged in a conspiracy to effect that object. Nor is it necessary to prove that the conspiracy

originated with the defendants; or that they met during the process of its concoction; for every person, entering into a conspiracy or common design already formed, is deemed in law a party to all acts done by any of the other parties, before or afterwards, in furtherance of the common design." Sec. 93, Vol. 3 Greenleaf on Evidence (Lewis's Edition) pp. 122, 123.

Wharton states the rule thus:

"Where several persons are proved to have unlawfully conspired to commit a crime, the acts and declarations of any conspirator pending such conspiracy, and in furtherance thereof, are admissible as substantive evidence against any co-conspirator on trial. The same rule is applicable and the same principles control in the case of an unlawful combination of persons though not necessarily a conspiracy. That is, persons may not conspire to commit a crime, or the prosecution may be unable to prove a conspiracy, but yet the evidence adduced may show that the persons involved in a crime were acting in concert in the commission of the crime charged. In such case, then, the rule applies that where several persons are proved to have acted in concert in the commission of a crime, and have thus combined for the same unlawful purpose, the acts and declarations of one co-actor in pursuance of the common act or design are admissible against any other co-actor on trial for the crime. When once the conspiracy or combination is established, the act or declaration of one conspirator or accomplice in the prosecution of the enterprise is considered the act or declaration of all, and therefore imputable to all. All are deemed to assent to, or command, what is said or done by anyone in furtherance of the common object. . . ." Sec. 699 p. 1183· to 1185, Vol. 2, Wharton's Criminal Evidence.

Dean Wigmore states the rule thus:

"(1) A conspiracy makes each conspirator liable under the criminal law for the acts of every

other conspirator done in pursuance of the conspiracy. Consequently, by the principle already exemplified in other relations . . . the admissions of a co-conspirator may be used to affect the proof against the others, on the same conditions as his acts when used to create their legal liability." Sec. 1079, p. 127, Vol. 4, Wigmore on Evidence (3rd. Ed.)

It should be remembered that this is a disciplinary proceeding only. It is not a proceeding in impeachment of the Juvenile Court Judge of Lake County.

In determining the facts and applying the law thereto, we recognize that this court is vested with much discretion, which should be exercised with caution and with a careful protection of the rights of the accused, agreeable with the legal rules and principles for determining guilt. We are also mindful of the rule that all matters touching upon the integrity of the bar should receive our fullest consideration without regard to technicalities, and we as a court must have the courage to apply the corrective law to the undisputed facts before us. 7 C. J. S., Attorney and Client, §34, p. 791. 5 Am. Jur., Attorneys at Law, §§249, 251, pp. 410, 411. Ex-parte Burr (1824), 9 Wheat. U. S. 529, 530, 6 L. Ed. 152. In this connection we cannot dismiss without special notice the many admissions made by the accused as heretofore noted.

Section 9-2804 Burns' 1942 Replacement provides for the prosecution and punishment of persons for encouraging the delinquency of boys under the age of sixteen years, or girls under the age of eighteen years. However, that section specifically provides:

". . . That all trials of persons charged with contributing to the delinquency of a child shall be conducted by the prosecuting attorney in accordance with the rules and procedure under which such

trials are now conducted in the criminal court or in the circuit courts while exercising criminal jurisdiction; . . . ."

In such trials the juvenile court is governed by the same rules and procedure as criminal and circuit courts. The informal and liberal practice, sometimes indulged in when the defendants are juveniles, does not prevail in such trials, as is contended by the accused.

It would require a rather violent exercise of judicial discretion for this court to believe the accused was so inexperienced and void of judicial knowledge that he thought, under this act, he had a right to entertain the motion for new trial filed fifteen days after he had sent the defendant to the Indiana State Farm, on his plea of guilty, to grant the motion and order the defendant returned from the farm to his court at 10:00 o'clock April 28, 1950, without any appearance of the state in the matter whatever. It would require a similar effort for us to believe that the accused thought Blaz Lucas, a deputy prosecuting attorney for the court had a right to represent the prisoner in filing, and procuring first an oral promise, and next the actual granting of the motion for new trial for the prisoner on April 21, 1950. Accused's statement that in making the order of April 21, 1950, he intended merely to fix the date of the hearing on the motion for new trial for April 28, 1950, is inconceivable for in that very order he granted the motion for new trial and ordered the prisoner returned to his court on the latter date. This record purports absolute verity. The accused is not in a position to attack it now. By his own admission, in the telephone talk on or before the date the motion was filed, he had promised Lucas to grant the motion. The record conclusively indicates that the judge did precisely what he promised Lucas he would do. In this

proceeding there is no contention that any reason for new trial whatever existed. Of course, a motion for new trial can be filed only after a trial has been had. It cannot be filed or acted upon when a plea of guilty has been entered and judgment is rendered thereon. *Ledgerwood* v. *The State* (1892), 134 Ind. 81, 91, 33 N. E. 631. *Meyers* v. *State* (1901), 156 Ind. 388, 59 N. E. 1052. *Jackson* v. *State* (1903), 161 Ind. 36, 37, 67 N. E. 690. *Trattner* v. *State* (1916), 185 Ind. 188, 113 N. E. 243. *Carr* v. *State* (1924), 194 Ind. 162, 164, 142 N. E. 378. *Capps* v. *State* (1928), 200 Ind. 4, 6, 161 N. E. 6. *Orr* v. *State* (1928), 200 Ind. 27, 28, 161 N. E. 269. *Gale* v. *State* (1929), 201 Ind. 532, 168 N. E. 241. *Polomskey* v. *State* (1943), 221 Ind. 6, 9, 46 N. E. 2d 201. See also Ewbank's Indiana Criminal Law (2d Ed.), §672 p. 489. So necessarily, the entire proceeding, after rendering judgment on the plea of guilty, was null and void, and this the accused, as an attorney at law, must have known. But this unauthorized proceeding resulted in freeing a confessedly guilty adult prisoner, and enriched deputy prosecuting attorney, Lucas, in the sum of six hundred dollars. Accused says he did not share in this money. But, he knowingly allowed himself and his court to be actively used for a wrongful purpose. In view of all the facts his explanation of his intention in making the record of April 21, 1950, cannot be understood on a basis of verity.

For his participation in this proceeding, among other things, attorney, Blaz Lucas, was disbarred. *In Re: Lucas* (1952), 230 Ind. 254, 102 N. E. 2d 909, although the reasons for the disbarment are not stated in that opinion. Can it be true that for his participation therein the deputy prosecuting attorney may be disbarred, while the judge without whose active and guilty participation the project could not have been started,

let alone accomplished, is protected from disciplinary action as an attorney by the judicial ermine he wears— a robe emblematic of purity and honor? The accused so contends, and we are required to give this contention our consideration.

So far as we can find it has always been held that the power to discipline and disbar attorneys at law is an inherent power of the courts. *Beamer, Attorney General* v. *Waddell* (1943), 221 Ind. 232, 240, 45 N. E. 2d 1020. *Re: Stolen* (1927), 193 Wis. 602, 214 N. W. 379, 216 N. W. 127, 55 A. L. R. 1355. It is at least a necessary incidental power exercised to protect the court's respectability, reputation and independence. The Indiana Constitution provides that "Any judge or prosecuting attorney, who shall have been convicted of corruption or other high crime, may on information in the name of the State be removed from office by the Supreme Court or in such other manner as may be prescribed by law." Art. 7, §12. This provision of the constitution has been further implemented by §§49-819, 49-820 Burns' 1951 Replacement. However, there is nothing in the constitutional provisions, or the statutes noted or elsewhere, so far as we can find, that in any way attempts to forbid, limit or affect the duty of this court to discipline the members of its bar. The Indiana cases cited by defendant are not in point because they are based upon entirely dissimilar facts and causes of action.[1] The cases from other jurisdictions cited by defendant,[2] likewise are based upon dissimilar facts and

---

1. Indiana cases cited as supporting this proposition are *Buhler* v. *Trick* (1924), 195 Ind. 190, 144 N. E. 840; *State* v. *Patterson* (1914), 181 Ind. 660, 105 N. E. 228; *The State ex rel. Pitman* v. *Tucker* (1874), 46 Ind. 355; *State* v. *Dearth* (1929), 201 Ind. 1, 164 N. E. 489; *Coons* v. *State* (1922), 191 Ind. 580, 134 N. E. 194; *Dale* v. *State* (1926), 198 Ind. 110, 150 N. E. 781.

2. The out of state cases cited as supporting this proposition are *In re Jones* (1943), 202 La. 729, 12 So. 2d 795; *In*

dissimilar laws. In so far as they may be found in conflict with this opinion we say, with the Wisconsin Supreme Court *In Re: Stolen,* supra, "We do not find ourselves in agreement with the reasoning of those cases."

An essential qualification for one who holds the status of an attorney at law is that he or she must be of good moral character in so far as it relates to the duties and responsibilities of an attorney at law. This is a continuing qualification, the loss of which requires action when properly brought to the attention of this court. *Beamer, Attorney General* v. *Wadell* (1943), 221 Ind. 232, 235, supra. 7 C. J. S., Attorney and Client, §20, p. 735. *Re: Stolen,* supra and cases there cited. The fact that the accused is a judge of the juvenile court of Lake County and was pretending to exercise duties as such in this matter, can in no way divest this court of its obligation to perform its duties in this proceeding, the purpose of which is to keep the roster of its attorneys clean.

In determining the issues joined we cannot allow ourselves to be concerned with the effect such determination may have upon accused's official station. If his suspension or disbarment results in his disqualification for some other office, that effect is only incidental. The exercise of the duty to carefully consider the issues joined and discipline the accused if we find the evidence sufficient to justify such action, is in harmony with the legislative purpose of requiring the juvenile court to

*re Meraux* (1943), 202 La. 736, 12 So. 2d 798; *State Bar of Calif.* v. *Superior Court* (1929), 207 Cal. 323, 278 Pac. 432; *In re Silkman,* 88 App. Div. 102, 84 NYS. 1025; *Baird* v. *Justice's Court,* 11 Cal. App. 439, 105 Pac. 259; *In re McGarry* (1942), 380 Ill. 359, 44 N. E. 2d 7; *Berry* v. *Smith* (1927), 148 Va. 424, 139 S. E. 252, 55 A.L.R. 279; *Yaselli* v. *Goff,* 2 Cir. 12 Fed. 2d 396, 275 U. S. 503, 48 S. C. 155, 72 L. Ed. 395.

be a member of the bar.[3] *Re Stolen,* supra and authorities there cited. *In re Peck* (1914), 88 Conn. 447, 91 Atl. 274, L. R. A. 1915A, p. 663. *In Re McGarry* (1942), 380 Ill. 359, 368, 369, 370 supra. *In re Voss* (1903), 11 N. D. 540, 552, 90 N. W. 15. It was doubtless the intent of the legislature that disciplinary proceedings would be used to keep a wayward judge from disgracing the bench.

Where the lack of morality relied upon by the informant has no relation to and does not effect the accused's duties and responsibilities as an attorney at law, the delinquencies are generally overlooked in disciplinary proceedings. However, where there is a lack of honesty, probity, integrity and fidelity to reposed trust as a public official, it cannot matter how the lack of such virtues may be revealed. When the revelation is made in a proper proceeding it is our duty to make the necessary disciplinary order.

We are driven to the conclusion that the accused at the time knew the purposes of Lucas in asking to file a motion for new trial in the Kaczka case. His acquiescence in this irregular and forbidden procedure, over the telephone, indicates his intimacy with Lucas and his willingness to engage in official corruption and to be an actor in the alleged conspiracy at the suggestion of Lucas. While it may be possible, it is difficult to believe that the accused acquiesced in this procedure, without sharing in the loot fruiting therefrom. But if we assume his statement that he did not so participate is true, it in no way relieves or palliates the evil done, nor does it cleanse the accused or the court over which he presides from the evil reputation that must come

3. The last paragraph of Section 1, Ch. 347, Acts 1945, §9-3101 Burns' 1942 Repl. Supp. with respect to juvenile court judges, provides: "At the time of his election he must have been a citizen of the United States and a practicing attorney or judge for a period of at least five (5) years."

from such conduct.[4] For notwithstanding the denial as to participation in the spoils, the ugly fact remains that, fifteen days after he went to prison on this sentence, Kaczka's family bought his release through the accused, by the procedure noted, for six hundred dollars paid to deputy prosecutor, Lucas. See *Re Rempfer* (1927), 51 S. D. 393, 404, 216 N. W. 355, 55 A. L. R. 1346.[5]

[4] *In re Voss*, 11 N. D. 540, 552, *supra*, was a proceeding to disbar a state's attorney. Among other things it was contended that the action could not be maintained because the misconduct complained of was wholly in the discharge of his duties as such official cognizable only in an impeachment proceeding. The court answered this contention, thus: "He held the office of state's attorney by virtue of his having a license from this court to practice law, and any deviation from the line of proper deportment in the office of state's attorney is equally a deviation from the line of proper deportment as an attorney at law. It can not be successfully maintained that criminal conduct on his part as state's attorney can not be used as evidence to take from him the authority under which he practices law, and under which he exercises the functions of state's attorney; whereas a person may commit some offenses not connected with his duties as an attorney at law, when such offenses do not unfit him from the practice of his profession and render him unworthy of the confidence of clients, and no ground exists for disbarring him."

[5] Rempfer was an attorney at law and a city judge. The premises of one Kroeger had been searched and a still and equipment and moonshine liquor had been found. Charges were filed against Kroger in Rempfer's court. Rempfer told Kroger the charges against him were very serious and advised him to employ a lawyer Kirby. They went to Kirby's office where it was agreed that Kroger should pay Kirby $1250.00, which he paid by a $500 check and a note for $750. The next day Kroeger and Kirby appeared before Rempfer, and entered Kroeger's plea of guilty to manufacturing intoxicating liquor. He was fined $250 and $34 costs, and sentenced to jail for thirty days. The jail sentence was suspended. Later lawyer Kirby without notice, made a motion to set aside the judgment and sentence against Kroeger, which was promptly granted by Rempfer and the judgment and sentence was set aside. For this and other causes, disbarment proceedings were brought against Rempfer.

In deciding the case the South Dakota Supreme Court among other things said: "It is clear from the facts found by the referee that the accused acted as attorney in advising Kroeger in the matter that might have come before the accused as county judge, and which later did actually come before him as such judge. It is also clear that he used his . . . position as an attorney to induce Kroeger through fear to give the $500 cash to Kirby. In other words, he assisted Kirby in obtaining a fee which seems to have been excessive or exorbitant, and which

The accused was a judge of a court of record. That court constitutes an important part of the governmental plan for the maintenance, and administration of justice, particularly for the children, of the state of Indiana. It has been said that "Pain and suffering may be bravely met, poverty and want endured without complaint, and the daily round of toil taken up with cheerful heart, but the soul of man in all ages has bitterly cried out against injustice and insistently demanded that it must not be." A lack of confidence in the integrity of the courts rocks the very foundations of organized society, promotes unrest and dissatisfaction, and even encourages disloyalty.

Accused's offense is one against the administration of justice. It brings the courts and the administration of justice into disrepute. It places a price upon justice. This cannot be in this Republic, for in Indiana "Justice shall be administered freely, and without purchase;" Art. 1, §12, Indiana Constitution. Serious offenses against the administration of justice on the part of officers of justice must meet with resolute action by the courts.

In this proceeding this court is the trier of the facts. We are not bound by the findings of our commissioner, and when it appears that he purposely blinded himself to patent facts, as it does in this case, it is our duty to reject his findings and state the facts as the record shows them to be. The record shows that our Commissioner, in an apparent lack of understanding of his duties wrongfully heard extensive speeches of counsel

was obtained in a manner which, as to the accused amounted to extortion . . ., and it was entirely immaterial whether or not the accused was seeking to obtain or did obtain any benefit or property for himself. If he assisted Kirby in obtaining the benefit he rendered himself guilty thereby. *In re Sherin*, 27 S. D. 232, 130 N. W. 761, 40 L. R. A. (NS) 801, Ann. Cas. 1913D, 446."

in "opening statements", and wrongfully sustained objections of the defendant to proper questions asked by the Disciplinary Commission designed to bring essential facts into the evidence. This he was without authority to do, since the admissibility of evidence is a question for the trial court to determine, not for the commissioner. Because of this prejudicial action by the commissioner it is probable our court is without much competent evidence in the case.

All the evidence concerning Kaczka's bastardy suit pending in the accused's court should be stricken from the record. It has nothing to do with the case against Kaczka for contributing to the delinquency of a minor. I think the exceptions of the Disciplinary Commission to the Commissioner's finding of facts should be sustained. We should find the defendant guilty of the charges filed and administer such discipline as the law provides.

NOTE: Reported in 113 N. E. 2d 282.